IN RE MTC ELECTRONIC TECHNOLOGIES　　　MEMORANDUM AND ORDER
SHAREHOLDER LITIGATION　　　　　　　　　　　No. MDL 1059 (JG)

---------------------------------------------------------------x

This Document Relates To: Fred Kayne, et al. v.　　93-CV-876 (JG)
MTC Electronic Technologies　　　　　　　　　　　　95-CV-2499 (JG)
Co., Ltd., et al.

---------------------------------------------------------------x

JOHN GLEESON, United States District Judge:

　　　　Two separate issues are before me in this case. First, the case is back before me on remand from the court of appeals' decision in *Gerber v. MTC Electronic Technologies Co., Ltd.*, 329 F.3d 297 (2d Cir. 2003). In *Gerber*, the court reviewed my approval of a bar order that was part of a settlement between the plaintiffs here (the "Kayne plaintiffs") and BDO Dunwoody (the "BDO settlement"). The court held, in relevant part, that my decision to approve a non-mutual bar order -- which would prevent the non-settling defendants from seeking indemnity and contribution from the settling defendant but would allow the settling defendant to seek indemnity and contribution from the non-settling defendants -- could not be sustained without further analysis that "fully consider[s] the competing equities involved in the mutual and non-mutual rules." *Gerber*, 329 F.3d at 300. I invited the parties to submit supplemental briefing on the issue and I have revisited the issue of mutuality in light of the equities referenced by the court of appeals.

　　　　Second, since the Second Circuit's ruling, Daiwa Securities America, Inc. ("Daiwa") and the *Kayne* plaintiffs have entered into a settlement agreement (the "Daiwa

settlement"). Those parties now seek approval of a settlement bar order that includes a mutual bar. (*See* Sinaiko Aff., Ex. 11 at ¶¶ E, F.) Certain remaining non-settling defendants, *i.e.*, Robert Farr, Peter Jensen, Thomas Lenagh, Edilberto Poszon, Goodwin Wang, and David Wong (collectively "the Individual defendants"), oppose that settlement.

For the reasons stated below, I now direct the entry of a mutual bar order in both settlements. I also deny the Individual defendants' motion for an order requiring plaintiffs to disclose the settlement amount in its action against Gibson Dunn & Crutcher LLP.

## BACKGROUND

A.  <u>The Litigation and Settlement</u>

This action arises from the alleged securities fraud of defendant MTC Electronic Technologies Co., Ltd. ("MTC") and its principals, officers and directors (the "MTC defendants"). The *Kayne* plaintiffs, a group of investors who purchased shares of MTC common stock from 1992 to 1994, filed suit claiming, among other things, that MTC's purported telecommunications joint ventures were fraudulent and materially misrepresented. They opted out of a consolidated class action that has long since settled. The other defendants in the action included BDO Dunwoody ("BDO") (MTC's auditor) and Daiwa (MTC's underwriter). The MTC defendants and BDO filed third-party claims against HSBC Bank Canada ("HSBC") and Ronald Driol, an HSBC officer, alleging that they assisted in the misappropriation of MTC stock by MTC principals.

In late 2000, the *Kayne* plaintiffs reached a settlement with BDO.[1] In pertinent part, the settlement provided that the non-settling parties, including Daiwa and the Individual defendants, were barred from pursuing any claims against BDO that were related to or arose out of the claims in the *Kayne* action, while expressly preserving any and all claims by BDO against Daiwa and the other non-settling defendants. (Sinaiko Aff., Ex. 6 at ¶ 4.3.) BDO requested that I enter an order to that effect. I referred the motion to Magistrate Judge A. Simon Chrein for a report and recommendation.

B.    The Report and Recommendation

Judge Chrein's characteristically thorough report recommended that I approve the entry of the settling defendant's non-mutual bar order. Judge Chrein felt obligated to follow the only authority in the Second Circuit on the issue. *See In re Del-Val Fin. Corp. Sec. Litig.*, 868 F. Supp. 547, 563-64 (S.D.N.Y. 1994) (allowing settling defendants to seek contribution from non-settling defendants to achieve equitable apportionment of damages among defendants where "one satisfaction" rule applies). Moreover, the non-settling defendants had taken a different posture in a similar proceeding where they "were on the receiving end of [the] benefit" of a non-mutual order. *See Gerber*, 329 F.3d at 302. Yet, Judge Chrein "express[ed] concern that '[a] rule which allows settling defendants, who are buying peace of mind and avoiding the costs and risks of litigation, to seek contribution from [the non-settling] defendants who bore the risk [of litigation] . . . seems unfair." *Id.* (internal quotations omitted). I adopted the report and recommendation.

---

[1] The *Kayne* plaintiffs also reached a separate settlement with HSBC and Driol. I do not address the bar order entered in favor of HSBC or Driol, however, because Daiwa and the individual defendants have since separately reached settlements with HSBC and Driol and thus neither Daiwa nor the other non-settling defendants challenge that bar order on remand. (Daiwa Mem. on Remand at 4 n.2.)

3

C.     The Second Circuit's Ruling

As stated above, the court of appeals vacated my approval of the non-mutual bar order and remanded for further consideration in light of the competing equities involved in the entry of such an order in the particular circumstances of this action. *Gerber*, 329 F.3d at 308 ("The magistrate judge's expressed view that he was 'obliged' to follow a non-binding district court decision, notwithstanding his concern that such a rule 'seem[ed] unfair,' convinces us that a remand for further consideration of the issue is warranted. Before approving a non-mutual bar order, the magistrate judge should have balanced the competing equities.").

The court summarized the issues as follows. Where the "one satisfaction" rule applies and there is only a partial settlement, the plaintiff "loses any benefit from the possibility that the settling defendant overpaid" because the plaintiff can only recover "its total *proven* damages." *Id.* at 308 (emphasis in original). Moreover, with the capped proportionate share rule, which applies to this case,[2] the plaintiff bears the risk of settling for less than the amount the jury assigns to the settling defendant because, regardless of a mutual or non-mutual bar order, the plaintiff cannot seek contribution from the non-settling defendants for more than their apportionment of damages.

"The question, then, is whether the non-settling defendant should be entitled to the benefit from the settling parties' miscalculation" if the settling party "overpaid", *i.e.*, paid more than its apportionment of damages according to the jury. *Id.* With a non-mutual bar order,

---

[2]     Under the capped proportionate share rule, as approved by the Second Circuit, the settlement amount is credited to the jury's damage award as follows: "the credit is the *greater* of the settlement amount for common damages or the settling defendants' share of liability as proven at trial." *Gerber*, 329 F.3d at 301 (emphasis in original). The crediting ensures that "the non-settling defendants will never be required to pay more than their proportionate share of an award as determined by the trier of fact." *Id.*

4

the settling party has an advantage: it avoids the cost of litigation and its liability in the end need not be greater than the portion of damages allocated to it by the jury (because it can seek contribution for any overpayment). With a mutual bar order, the non-settling party benefits: its payment is reduced by any amount the settling party "overpaid."

As none of the parties is necessarily entitled to such a benefit, the court of appeals directed me to balance the equities. It listed the following factors to be considered in my determination: (1) the fairness of either the settling or the non-settling defendants gaining an advantage through settlement; (2) the risk of collusion between the settling parties and the plaintiffs; (3) the possibility that the non-settling defendants benefitted from a non-mutual order in the earlier settlement of the class action claims; (4) Congress's determination in the Private Securities Litigation Reform Act ("PSLRA") that a mutual bar order "was a better approach;" and (5) BDO's assertion at oral argument that it intended to exercise its right under the non-mutual bar only to pursue claims against MTC and its parent corporation, and not against Daiwa.

D.   The Daiwa Settlement

The landscape has changed somewhat with the introduction of Daiwa's settlement and application for approval of a mutual bar order. On December 13, 2004, Daiwa entered into a settlement agreement with the *Kayne* plaintiffs for $10 million ("Daiwa settlement").[3] Daiwa maintains that the BDO bar order being reviewed on remand should be mutual. In its own settlement with the *Kayne* plaintiffs, Daiwa's bar order is "substantially identical to the ones this Court previously entered . . . in favor or BDO and HSBC," although it "is mutual, precluding

---

[3] The parties to the settlement propose that approximately $4 million be allocated for out-of-pocket damages, $3.08 million be allocated to prejudgment interest, and $2.92 million to attorneys' fees.

5

contribution and indemnity claims *by or against* Daiwa." (Daiwa Mem. Supp. Daiwa Bar Order at 5-6 (emphasis in original.)) Only in the event I once again direct the entry of non-mutual bar order for the BDO settlement does Daiwa seek a non-mutual bar order. (*Id*.)

The Individual defendants oppose the entry of Daiwa's settlement bar order, arguing that (1) the settlement is unfair, unreasonable and inadequate; and (2) the terms of plaintiffs' settlement in a separate, state action in California against the law firm of Gibson, Dunn and Crutcher, LLP ("Gibson Dunn") should be disclosed before a decision is made. They also insist that, in the event I approve Daiwa's motion, (a) the bar order should be mutual; (b) the capped proportionate share rule should apply; and (c) I should defer allocation of the settlement amount to the trial judge.

## DISCUSSION

### A. BDO Bar Order on Remand

The equities do not favor either the settling party or the non-settling parties. Nevertheless, the facts and circumstances of this action favor the application of the mutual rule over the application of the non-mutual rule. Accordingly, I now endorse a mutual bar order.

#### 1. Fairness of Apportionment of Damages Under Mutual Bar Order

At the outset, although a non-mutual bar order ensures that each defendant will pay no more than its fair share of liability, a mutual bar is by no means unfair – it merely forces a settling party to bear the risk of the settlement it negotiated. By settling with the *Kayne* plaintiffs, BDO paid a sum certain to cap its exposure by avoiding the risk of an unknown award by the fact-finder and by eliminating any further expenses associated with litigation – risks that the Individual defendants would shoulder should they proceed to trial. BDO cannot assume that

such substantial benefits are without cost. Instead, BDO can fairly be required to bear the lesser risk that any settling party bears: that its settlement payment exceeds the liability that would have been imposed against it at trial. If BDO paid too much to settle the case, the overpayment was the premium it paid to avoid litigation risk and expenses. Thus, a mutual bar order would not render the settlement an unfair bargain.

2. Collusion

With a non-mutual bar order, both the settling defendant and the plaintiff have an incentive to minimize the jury's apportionment of fault to the settling defendant "because the settling defendant would be able to increase the amount of contribution it was entitled to by showing that the non-settling defendant was more at fault, and the plaintiff would want to avoid a situation in which the proportionate share of the settling defendant was found to be greater than the settlement amount." *Gerber*, 329 F.3d at 309. The court of appeals reasoned that a mutual bar is preferable because it "may avoid creating incentives for collusion between settling parties, while not putting the settling defendant at any unfair disadvantage." *Id.* at 308.

The terms of the settlement here suggest at least the possibility of such collusion. In paragraph 3 of the Settlement Agreement, entitled "Cooperation in Prosecution of Federal Court Action and State Court Action," BDO essentially agreed to work with the *Kayne* plaintiffs in pursuing their claims against Daiwa and the other non-settling defendants. (*See, e.g.*, Sinaiko Aff., Ex. 6 at ¶ 3.1) ("Plaintiffs may . . . meet with expert witnesses designated by BDO . . . and designate the BDO Experts as expert witnesses . . . .); (*see also id.* at ¶ 3.2) ("BDO will provide to Plaintiffs . . . all witness statements and notes of interviews of witnesses . . . . BDO will provide, at BDO's place of business, access to all of its partners or employees or other people

7

over whom it has control, for interviews. BDO witnesses will appear for trial . . . . BDO will provide access to its, or its counsel's files and records . . . .). Although Daiwa has now settled, the argument still applies with respect to the Individual defendants.

      3.      Private Securities Litigation Reform Act

As the court of appeals observed, Congress has determined that mutual bar orders are preferable. The PSLRA provides, in pertinent part:

> A covered person who settles any private action at any time before final verdict or judgment shall be discharged from all claims for contribution brought by other persons. Upon entry of the settlement by the court, the court shall enter a bar order constituting the final discharge of all obligations to the plaintiff of the settling covered person arising out of the action. The order shall bar all future claims for contribution arising out of the action --
> (i) by any person against the settling covered person; and
> (ii) by the settling covered person against any person, other than a person whose liability has been extinguished by the settlement of the settling covered person.

15 U.S.C. § 78u-4(f)(7)(A). This choice by Congress weighs in favor of mutuality here. *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 730 (E.D. Pa. 2001).

      4.      Daiwa's Non-mutual Bar Order in Class-Action Settlement

It is true that Daiwa benefitted from a similar non-mutual bar order in the prior settlement of the class action claims, but this fact does not counsel strongly in favor of a non-mutual bar order here. In the class action settlement, I approved Daiwa's non-mutual order without any objection from the non-settling individual defendants. Moreover, there were a number of claims at issue that were independent of any contribution or indemnification claims, so a mutual bar order would not have extinguished some claims in any event.

8

5. BDO's Representation

At the oral argument in the court of appeals, counsel for BDO indicated that it sought a non-mutual bar order to pursue potential future claims against MTC and its parent -- not against Daiwa. The court suggested that I consider this representation in my assessment on remand. However, this stated intention does not strongly favor application of a non-mutual bar. Rather, on remand, BDO appears to be hedging its bets. (*See* BDO Mem. on Remand at 2) ("BDO wishes to preserve the possibility that it may at some point pursue claims against the real wrongdoers, *including* [*i.e.*, but not limited to] MTC (and Grande Holdings).") (emphasis added). Put another way, BDO has not requested this Court, on remand, to order a non-mutual bar order as against MTC and its parent only.

Based on my review of the equities, as directed by the court of appeals, I conclude that a mutual bar order is appropriate. Accordingly, neither the settling defendant, nor the non-settling defendants will be able to seek indemnity or contribution against the other.

B. The Daiwa Settlement

1. Fair, Reasonable, and Adequate Settlement

The Individual defendants argue that the *Kayne* plaintiffs' settlement with Daiwa is "grossly unfair, unreasonable, and inadequate" because it "grossly underestimates Daiwa's proportionate fault in this action." (Indiv. Defs.' Mem. Opp. Daiwa Bar Order at 14.) They contend that if the plaintiffs prevail, it is "patently unfair to the Individual[] [defendants] that Daiwa receive a bar order in its favor in exchange for paying only 18% of plaintiffs' purported damages" when, they contend, the "preponderance of the responsibility . . . would be with Daiwa." (*Id.* at 16.) I disagree.

9

In general, settlements must be "fair, reasonable and adequate." *Gerber*, 329 F.3d at 302 (quotation marks omitted). And "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval." *Id.* "Relative fault is not the only factor that district courts should take into account when appraising the fairness of a settlement. The likelihood of the plaintiff's prevailing at trial and the adequacy of the resources of the most culpable party, for example, may also be taken into account." *In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1031 (2d Cir. 1992) (citations omitted).

The Individual defendants do not persuasively argue that their rights are diminished by the Daiwa settlement. While they claim the Daiwa settlement is "patently unfair" to them, the argument is not persuasive where, as here, their own liability will be capped at their proportional share of the damages.

2. The Terms of Plaintiffs' Settlement with Gibson Dunn & Crutcher, LLP

The *Kayne* plaintiffs brought an action in California state court against Gibson Dunn, the law firm retained by MTC for the offering at issue. That action was settled in June of 2004, and the Individual defendants argue that the terms of this settlement must be disclosed before I can assess the fairness of the Daiwa settlement. I disagree. The argument is premised on the Individual defendants' suspect evaluation of the plaintiffs' total damages, from which the defendants speculate that, with the Gibson Dunn settlement included, the plaintiffs have already recovered more than they lost. Because I reject the premise, I reject the argument as well.

3. The Apportionment of Settlement Funds

The Settlement Agreement between the *Kayne* plaintiffs and Daiwa allocates the payment as follows: $4 million to damages, $3.08 million to prejudgment interest (calculated at 7 percent simple interest for 11 years) and $2.92 million to attorneys' fees. (Sinaiko Aff., Ex. 10 at ¶ 2.3.) The agreement also states that

> Plaintiffs agree that determination of the propriety of any allocations of the Settlement Payment between damages, prejudgment interest and attorneys' fees shall be deferred to the trial judge in the Federal Court Action or the Berg Action for judgment reduction purposes. Plaintiffs further agree that judgment reduction shall be applied at trial in the Federal Court Action or the Berg Action pursuant to the "capped proportionate share" method as set forth in the orders in the Federal Court Action dated October 26, 2001 and entered January 7, 2002, as those orders were modified by the Gerber Appellate Ruling.

(*Id.* at ¶ 3.2.3.) In other words, while these allocations are part of the settlement agreement, the *Kayne* plaintiffs make their settlement "contingent" on my "deferring any ruling on the propriety of the allocations within the total settlement amount to the trial judge." (Pl. Mem. Supp. Daiwa Bar Order at 5.) The Individual defendants argue that the proposed allocations are unfair because of their impact on the judgment credit, and they further argue that the issue of allocation is reserved for the trial judge. They request that I "make explicit . . . that [the Court] does not endorse the proposed allocations." (Indiv. Defs.' Mem. Opp. Daiwa Bar Order at 22.)

In *Gerber,* the Second Circuit, in affirming a similar agreement, clarified that "the judgment credit will be at least the full amount of the settlement for common damages." *Gerber*, 329 F.3d at 304. Specifically, it held that "the non-settling defendants are not entitled to any greater degree of certainty about the amount of their judgment credit than they already have"

11

based on the combination of the one-satisfaction rule and the capped proportionate share rule. *Id.* at 304. Although the BDO settlement agreement allocated the payment to out-of-pocket, prejudgment interest and attorneys' fees, I properly "[left] the determination of the actual amount of the judgment credit for calculation at trial." *Id.* at 305. The Daiwa agreement is substantially similar to the BDO agreement approved by the Second Circuit, and allows for the trial court to ultimately allocate the settlement amount, in accordance with the one-satisfaction and capped proportionate share rules. Accordingly, I approve the settlement agreement as submitted by the *Kayne* plaintiffs and Daiwa, and deny the Individual defendants' request that I make explicit that I do not approve these allocations.

## CONCLUSION

For the reasons stated above, I do not adopt that portion of Chief Magistrate Judge Chrein's report and recommendation that recommended the approval of entry of a non-mutual bar order. Rather, I order the entry of a mutual bar order in the BDO settlement. I also approve the Daiwa settlement order and deny the Individual defendants' request that I order the *Kayne* plaintiffs to disclose the settlement amount in their case against Gibson Dunn.

So Ordered.

John Gleeson, U.S.D.J.

Dated: May 31, 2005
Brooklyn, New York